UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID CSANADI,<br>*Petitioner,*<br>v.<br>UNITED STATES OF AMERICA,<br>*Respondent.* | Civil No. 3:15cv1459 (JBA)<br><br>May 4, 2016 |

**RULING ON PETITIONER'S MOTION UNDER § 2255
AND MOTION FOR EXTENSION OF TIME**

On November 3, 2014, Petitioner David Csanadi sought leave to file a petition under 28 U.S.C. § 2255 after the expiration of the one-year period allotted to do so by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The Court denied Mr. Csanadi's motion on February 24, 2015 without prejudice to renew, on the grounds that the Court lacked authority to grant it, as Mr. Csanadi had not filed any § 2255 petition. Seven months later, on October 5, 2015, Mr. Csanadi filed a § 2255 petition [Doc. # 2] to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody as well as a second motion [Doc. # 1] for leave to file a § 2255 petition out of time. For the following reasons, Mr. Csanadi's motions are denied.

I.  **Background**

A.  **Legal Proceedings**

On March 31, 2011, the Newtown Police Department obtained two Connecticut Superior Court search warrants to seize items from Petitioner's residence. The police executed those warrants on April 8, 2011, at which time they seized a computer, a collection of DVDs, several 8mm videotapes, and other items. The computer contained 7,500 images

and 27 videos of child pornography. Mr. Csanadi was arrested on state charges of sexual assault, illegal sexual contact, and possession of child pornography.

Thereafter, on December 13, 2011, Mr. Csanadi was indicted by a federal grand jury on three counts of production of child pornography and one count of possession of child pornography. *See United States v. Csanadi*, No. 3:11cr239 (JBA) (D. Conn.), Indictment [Doc. # 1]. On February 2, 2012, Mr. Csanadi moved to suppress "all DVDs, VHS tapes and 8mm videotapes seized" from his residence, "on the grounds that the officers exceeded the scope of the search and seizure authorized by the warrant and there was no probable cause to support either the issuance of a warrant for the seized items or for their seizure without a warrant." *Id.*, Mot. to Suppress [Doc. # 15] at 1, 2. That motion was denied on August 31, 2012. *See id.*, Ruling on Def.'s Mot. to Suppress Evidence [Doc. # 39].

On November 2, 2012, Mr. Csanadi pled guilty to production of child pornography in violation of 18 U.S.C. § 2251. *See id.*, Plea Agmt. [Doc. # 44]. The Plea Agreement specifies that "the defendant reserves his right to appeal from the judgment of conviction to review this Court's ruling filed August 31, 2012 (Document No. 39), denying his motion to suppress evidence (Document No. 15). In addition, the parties reserve their respective rights to appeal and to oppose each other's appeal of the sentence imposed as permitted by 18 U.S.C. § 3742." *Id.* at 6.

Mr. Csanadi pled guilty in Connecticut Superior Court to sexual assault in the first degree, illegal sexual contact, and possession of child pornography on January 22, 2013. (Thomas Decl., Ex. A to Gov't's Opp'n [Doc. # 12] ¶ 5.) He received a sentence of 20 years' imprisonment, which was stayed until the imposition of his federal sentence, so that he could serve his time in federal custody. (*Id.*) Thereafter, on March 19, 2013, this Court

2

sentenced Petitioner to 240 months' imprisonment and 180 months' supervised release. Judgment entered on April 2, 2013. Because Mr. Csanadi did not appeal his conviction, judgment became final on April 16, 2013.

### B. Ms. Csanadi's Activities After Sentencing

Mr. Csanadi began serving his sentence on April 12, 2013 at MDC Brooklyn (New York). (Inmate History, Ex. B to Mot. for Leave to File 2255 Out of Time at 3.) On May 9, 2013, he was moved to FCI Ray Brook (New York). (*Id.*) About a week later, on May 17, 2013, he was moved into the Special Housing Unit ("SHU") at FCI Ray Brook for his protection. (*Id.*) He spent the majority of the next eight months there. (*Id.*) On January 24, 2014, Petitioner was transferred to FCI Butner (North Carolina)—by way of Canaan (Pennsylvania), Philadelphia (Pennsylvania), and Petersburg (Virginia)—where he arrived on February 18, 2014. (*Id.* at 2.)

Mr. Csanadi represents that on February 24, 2014, he called his attorney, Paul Thomas, to inquire about the status of the appeal he claims to have believed Attorney Thomas had filed. (Mot. for Leave to File 2255 Out of Time at 2.) At that time, he learned that Attorney Thomas had not in fact filed an appeal on his behalf. (*Id.*) Shortly thereafter, he "heard about a § 2255 for the first time from his cellmate." (*Id.*)

Petitioner asserts that on or about March 5, 2014, his father called Attorney Thomas to obtain his legal papers, which arrived several days later. (*Id.* at 3.) Mr. Csanadi represents that at some point after he received the papers, a law clerk at FCI Butner offered to help him file a § 2255 petition, and informed him that his sister, a paralegal, would electronically file the petition for $100. (*Id.*) "He also told Mr. Csanadi that the Court granted a ninety day exten[s]ion, which made his new deadline to file June 22, 2014." (*Id.*)

3

On June 3, 2014, Mr. Csanadi was again moved into SHU. (Inmate History at 2.) On June 20, 2014, he called his father to ask him to call the courthouse to inquire about the status of his § 2255 petition. (Mot. for Leave to File 2255 Out of Time at 4.) He was informed that no petition had been filed. (*Id.*) Mr. Csanadi therefore drafted a letter to this Court on June 22, 2014, seeking an extension of time in which to file his § 2255 petition and appointment of counsel.[1] (*Id.*) By letter dated June 29, 2014, he moved for "discovery of any and all materials used in [his] case." *See Csanadi*, No. 3:11cr239 (JBA), Motion for Copy of File [Doc. # 67]. Mr. Csanadi represents that in July 2014, while awaiting the decision on his motions, he wrote to the Supreme Court, requesting assistance, and on August 7, 2014, he wrote to Attorney Thomas, seeking a form for filing a § 2241 petition. (*See* Ex. F to Mot. for Leave to File 2255 Out of Time.)

On August 14, 2014, Mr. Csanadi was moved again, this time to FCI Berlin (New Hampshire)—by way of Oklahoma and Brooklyn, New York. (Inmate History at 1.) He arrived on August 28, 2014, and was transferred to SHU the following day. (*Id.*) At some point during the next month, Mr. Csanadi wrote to a Public Defender in Bridgeport, Connecticut, seeking contact information for a pro bono attorney. (*See* Ex. G to Mot. for Leave to File 2255 Out of Time.) The Public Defender responded by letter dated October 2, 2014, providing the information Mr. Csanadi sought. (*Id.*)

---

[1] Although that letter was dated June 22, 2014 and is marked as having been received on June 27, 2014, it was not docketed until November 3, 2014. *See Csanadi*, No. 3:11cr239 (JBA), Letter Notice [Doc. # 71]; *id.*, Motion for Leave to File 2255 Petition Out of Time [Doc. # 69].

On January 8, 2015, Petitioner was transferred to FCI McKean (Pennsylvania)—by way of Devens (Massachusetts), Brooklyn (New York), and Canaan (Pennsylvania)—where he arrived on January 22, 2015. (Inmate History at 1.) His personal property, including legal papers, arrived on February 3, 2015. (*See* Ex. H to Mot. for Leave to File 2255 Out of Time.) The Court issued its ruling denying Mr. Csanadi's request for an extension of time, without prejudice to re-file, on February 24, 2015. The motions currently before the Court, dated September 2, 2015, were docketed on October 5, 2015.

## II. Legal Standard

Section 2255 allows prisoners in federal custody to move for their sentences to be vacated, set aside, or corrected if their "sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). However, under AEDPA, claims under § 2255 must be brought within one year of the later of

> the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In "rare and exceptional circumstance[s]," *Smith v. McGinnis*, 208 F.2d 13, 17 (2d Cir. 2000), the one-year period may be equitably tolled (that is, the one-year period within

which the claim had to be filed would not begin to accrue until a later date). However, "[t]o equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001).

"Whether a circumstance is extraordinary is based not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (internal quotation marks and alterations omitted). "In determining whether a petitioner has diligently pursued his rights, the standard is one of reasonable diligence, 'not extreme diligence or exceptional diligence.'" *Rivera v. United States*, 719 F. Supp. 2d 230, 234 (D. Conn. 2010) *aff'd*, 448 F. App'x 145 (2d Cir. 2011) (quoting *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003)). Thus, a district court should ask, "'[D]id the petitioner act as diligently as reasonably could have been expected under the circumstances?'" *Id.* (quoting *Baldayaque*, 338 F. 3d at 153.)

### III. Discussion

#### A. Motion for Extension of Time

Mr. Csanadi identifies several alleged impediments to filing his § 2255 petition in a timely manner, and for which he seeks equitable tolling. These include: (1) his belief, for approximately eight months between April 16, 2013 (when his conviction became final) and February 24, 2014, that Attorney Thomas had filed an appeal on his behalf; (2) this Court's delay in ruling on his June 22, 2014 motion to file an out of time petition and for

6

appointment of counsel until February 24, 2015; (3) the extended periods of time he spent in the Special Housing Unit; (4) several stretches of time when he was being transferred from one prison to another; and (5) his belief, beginning sometime after March 7, 2014,[2] and continuing until June 20, 2014, that he had received an extension of time to file his petition until June 22, 2014 and that a law clerk at FCI Butner was going to file the petition on his behalf. The Court examines each of these claims in turn.

### 1. April 16, 2013 to February 24, 2014

There is a factual dispute between Mr. Csanadi's account that Attorney Thomas told him that he was going to file an appeal on his behalf and Attorney Thomas's declaration that Mr. Csanadi had in fact directed him not to file an appeal. However, for purposes of this motion only, the Court assumes that Mr. Csanadi's version of events is accurate. The Court therefore assumes, for purposes of this motion, that Attorney Thomas told Mr. Csanadi that he was filing an appeal, but neither filed such an appeal nor notified Mr. Csanadi that he had not done so. This is the kind of rare and extraordinary circumstance that warrants equitable tolling. *See, e.g., Baldayaque,* 338 F.3d at 150–53 (holding that petitioner's attorney's failure to file § 2255 petition on his behalf in spite of petitioner's request that he do so constitute a rare and extraordinary circumstance). After

---

[2] Attorney Thomas mailed Mr. Csanadi's legal papers to him on March 5, 2014. The Court presumes they arrived around March 7, 2014. Mr. Csanadi does not identify the date on which the prison law clerk told him that he would handle Mr. Csanadi's § 2255 petition, but he does state that this occurred after he received his legal papers from Attorney Thomas.

7

all, had Attorney Thomas filed an appeal, as Mr. Csanadi claims to have believed he planned to do, Mr. Csanadi would have had no need to file a § 2255 petition.[3]

The question then becomes whether Mr. Csanadi was reasonably diligent, such that equitable tolling for the period between April 16, 2013 and February 24, 2014 is appropriate. The Second Circuit's ruling in *Wims v. United States*, 225 F.3d 186 (2d Cir. 2000) is instructive. There, as here, the petitioner believed that his counsel was pursuing an appeal on his behalf. *Id.* at 188. After sixteen months, he learned that his counsel had not in fact filed the appeal, and a month after that, the petitioner filed a habeas petition. *Id.* The petition was therefore five months late. *Id.* The Court held as follows:

> The proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed. After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever), so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence. . . .
>
> Turning to the facts of this case, due diligence plainly did not require Wims to check up on his counsel's pursuit of an appeal on September 22, 1997, the very day on which Wims' conviction became final absent appeal. The statute of limitations, therefore, did not begin to run until sometime after that day. As an appellate court, we cannot say precisely when, in exercising due diligence, Wims would have discovered his counsel's failure to appeal. This is so because the date on which the limitations clock began to tick is a fact-specific issue the resolution of which depends, among other things, on the details of Wims' post-sentence conversation with his lawyer and on the conditions of his confinement in the period after September 22, 1997. Although these questions are appropriately answered by the district court,

---

[3] Mr. Csanadi's petition claims ineffective assistance of counsel for Attorney Thomas's failure to file an appeal, and additionally challenges a warrant that would have been the subject of the appeal.

we can, however, say that the five-month delay between September 1997 and February 1998—one year before Wims sought habeas relief—is not so clearly unreasonable that it plainly appears from the face of appellant's petition and supporting papers that he is barred from habeas relief.

*Id.* at 190–91 (internal citations and footnotes omitted).

This Court does not believe that a reasonably diligent person in Mr. Csanadi's circumstances[4] would have discovered that no appeal had been filed earlier than did Mr. Csanadi. For this reason, the Court finds that if Mr. Csanadi could show that Attorney Thomas in fact told him that he would file an appeal on his behalf, equitable tolling would be appropriate for the period of time between April 16, 2013 and February 24, 2014, and in calculating the statute of limitations period, the Court would begin from February 24, 2014.

### 2. June 22, 2014 to February 24, 2015

Petitioner argues that the statute of limitations should be tolled for the period between June 22, 2014,[5] when he sent his motion for an extension of time and for appointment of counsel to this Court, and February 24, 2015, when the Court ruled on the motion, on the grounds that (1) motions for appointment of counsel toll the statute of limitations until they are ruled upon; and (2) the filing of his motion for extension of time,

---

[4] The Court notes specifically Mr. Csanadi's apparent, and warranted, belief in his attorney's efficacy, the several weeks he spent in transit between prisons, and his confinement in a Special Housing Unit.

[5] Although the record reveals that Mr. Csanadi's motion was dated June 24, 2014, it does not reveal when Mr. Csanadi actually gave the letter to prison officials for mailing. However, because the letter is stamped "received" on June 27, 2014, for purposes of this motion, the Court assumes Mr. Csanadi gave the motion to prison officials on June 24, 2014, the date he wrote it. It is not clear why Mr. Csanadi's motion, received by the clerk's office on June 27, 2014, was not docketed until November 3, 2014.

which he claims was a defective pleading, tolled the statute of limitations. (*See* Reply [Doc. # 13] at 6–8.) Although Petitioner is to be commended on his well-researched Reply brief, for the following reasons, his arguments are unavailing.

### a. Motion for Appointment of Counsel

In his Reply, Mr. Csanadi cites several Title VII cases in which courts have noted that the statute of limitations may be equitably tolled during the pendency of a motion for the appointment of counsel. (*See* Reply at 7 (citing *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994); *Harris v. Walgreen's Distrib. Ctr.*, 456 F.2d 588, 592 (6th Cir. 1972); *Jenkins v. Potter*, 271 F. Supp. 2d 557, 563 (S.D.N.Y. 2003)).) As explained by the Sixth Circuit in *Harris*, "a complainant able to hire a lawyer might be able to file suit within [the] 30 day[] [statute of limitations], while one financially unable to do so was still petitioning the court to appoint a lawyer for him. Obviously, too, the filing, processing and decision of the motion for counsel could consume the entire 30-day period." 456 F.2d at 591. However, as the Government notes in its Sur-Reply, Mr. Csanadi has cited no case in which equitable tolling has been applied during the pendency of a motion for appointment of counsel in the habeas context.[6]

---

[6] The Government cites a line of cases discussing whether the filing of a motion for appointment of counsel in state court tolls the statute of limitations for a § 2254 petition in light of § 2244(d)(2)'s mandate that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." (*See* Sur-Reply [Doc. # 16] at 1–3.) The relevance of those cases—which hold that a motion for appointment of counsel in state court (prior to the filing of a state habeas petition) does not constitute a "properly filed application for State post-conviction or other collateral review" within the meaning of § 2244—to the question here (of whether a motion

10

The closest Mr. Csanadi gets to doing so is his citation to *United States v. Flores*, where Judge Lynch considered the argument Mr. Csanadi raises here, but ultimately did not decide whether or not to adopt it. Nos. 01cr782 (GEL) & 07Civ466 (GEL), 2007 WL 4326733 (S.D.N.Y. Dec. 4, 2007). Judge Lynch noted on the one hand that "[n]othing prevented [the petitioner] from filing a § 2255 motion in a timely manner while his motion for appointment of counsel was pending" and he "could have filed that petition in a timely manner, and then moved for the appointment of counsel to assist in its prosecution." *Id.* at *2. On the other hand, Judge Lynch opined that there was reason to believe that the *Harris* line of cases might apply in the habeas context, and if it did, would toll the petitioner's statute of limitations. *Id.* In the end, however, Judge Lynch skirted this "preliminary procedural issue[]," holding that the petition was without merit. *Id.* at *3.

This Court is unpersuaded that the *Harris* line of cases applies in the habeas context. Unlike in the Title VII context, where a plaintiff cannot reach federal court to file a motion for appointment of counsel until she has set forth and exhausted her claims before the EEOC, a habeas petitioner who files a motion for appointment of counsel prior to a habeas petition has not laid out the basis of her claim in any forum. This distinction is important.

If such motions for appointment of counsel tolled the statute of limitations for the filing of a § 2255 petition until the Court acted upon them (necessarily, to deny them for lack of jurisdiction), petitioners could substantially extend the time for filing their habeas petitions by seeking appointment of counsel after sentencing in every case, without having

---

for appointment of counsel filed in federal court prior to the filing of a federal habeas petition tolls the statute of limitations under § 2255) is not apparent.

to so much as set forth any basis of their claims for habeas relief. Such a system would undermine AEDPA's statute of limitations and essentially eliminate the requirement that prisoners demonstrate "extraordinary" circumstances in order to obtain equitable tolling. *See Sanchez-Butriago v. United States*, Nos. 00Civ8820 (JFK) & 89cr644-2 (JFK), 2003 WL 354977, at *3 (S.D.N.Y. Feb. 14, 2003) ("The limitations period is not tolled whenever a petitioner files any sort of motion. Were it tolled so easily, a petitioner could repeatedly file motions, ones with little to no chance of success, and effectively eviscerate AEDPA's statute of limitations.").

Mr. Csanadi admits that he knew that the deadline for the filing of his habeas petition was pending (or passed) when he filed his motion for appointment of counsel. He could have and should have filed "a pro se skeletal petition" rather than only the motion for appointment of counsel. *Nelson v. Quarterman*, 215 F. App'x 396, 398 (5th Cir. 2007). His failure to do so constitutes a lack of required diligence, and this Court therefore declines to equitably toll the statute of limitations during the pendency of Mr. Csanadi's motion for appointment of counsel.

### b. Motion for Extension of Time Defective Pleading

Mr. Csanadi next argues that his motion for extension of time was a "defective pleading" of the type that the Supreme Court has held may toll the statute of limitations. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period . . . ."). However, as the Government argues, "the type of defective pleading that warrants equitable tolling are motions or complaints that are complete on their face and sufficient to give notice to the other party of the claims

being asserted, but are otherwise defective because of some technicality." (Sur-Reply at 4 (citing *Burnett v. New York Central R. Co.*, 380 U.S. 424 (1965) (timely complaint filed in wrong court); *Herb v. Pitcairn*, 325 U.S. 77 (1945) (same); *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) (timely filing of defective class action)).) That is not the case here.

Further, as the Government notes in its Opposition,

> [i]f the Court could not grant [Mr. Csanadi's] request for extra time in the first place, then the period during which the motion for extra time was pending cannot serve as the basis for equitable tolling. To hold otherwise would allow a defendant to file for extra time without filing a § 2255 petition, thus buying himself extra time to file a § 2255 petition while the motion was pending, and thereby creating an end run around the law that a court cannot grant a motion for extra time until a § 2255 petition is filed.

(Gov't's Omnibus Opp'n at 20.) The Court finds this point persuasive. For all of these reasons, Mr. Csanadi is not entitled to equitable tolling for the period June 22, 2014 to February 24, 2015.

### 3. Transit Time and Time in SHU

Petitioner next appears to claim that the time he spent in transit between prisons and in SHU should be tolled. However, courts in this Circuit have generally not found such circumstances to be rare and extraordinary. *See, e.g., Acosta v. United States*, No. 09 CR 1126 (SAS), 2012 WL 206119, at *2 (S.D.N.Y. Jan. 23, 2012) ("The impediments asserted by petitioner—including prisoner transfers, lockdowns, and limited access to legal papers and law libraries—are common to many prisoners during their incarceration. Such impediments do not constitute the type of 'extraordinary circumstances' that would warrant equitable tolling of the statute of limitations."); *Rivera*, 719 F. Supp. 2d at 234 ("'[T]he difficulties attendant on prison life, such as transfers between facilities, solitary

13

confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, [generally] do not by themselves qualify as extraordinary circumstances.") (quoting *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005)); *Johnson v. Girdich*, No. 03 CIV. 5086 (LBS), 2006 WL 473886, at *2 (S.D.N.Y. Feb. 27, 2006) ("'[A]dministrative difficulties associated with correctional procedures such as transfers and lock-downs do not generally constitute circumstances under which equitable tolling is granted.'" (quoting *Taylor v. Hodges*, No. 01-2566, 2001 U.S. Dist. LEXIS 18814, at *6 (S.D.N.Y. Nov. 26, 2001)).

Moreover, and importantly, Mr. Csanadi does not explain what effect his time in SHU had on his ability to diligently pursue filing a § 2255 petition. As the Government notes, it appears that Mr. Csanadi was able to make phone calls and write letters from SHU, as he did multiple times in June 2014. (*See* Inmate History at 2 (showing Mr. Csanadi was in SHU from June 3, 2014 until August 2014); Mot. for Leave to File 2255 Out of Time at 4 (discussing calling his father on June 20, 2014 and writing a letter to the Court on June 22, 2014)); *see also Csanadi*, No. 3:11cr239 (JBA), Motion for Copy of File; *id.*, Mot. for Leave to File 2255 Petition Out of Time. Mr. Csanadi does not allege otherwise, nor does he contend that he was unable to access his legal papers while he was in SHU. In the absence of any such claims, the Court finds no justification for tolling the statute of limitations.

Further, even if the Court tolled the statute of limitations while Mr. Csanadi was in transit between facilities, Mr. Csanadi would only get an additional 41 days,[7] which, as explained below, is not enough to make his petition timely.

---

[7] Mr. Csanadi's prison records show that he was in transit between August 14 and August 27, 2014, and January 8, 2015 and February 3, 2015. (*See* Inmate History at 3.) The

14

### 4. March/April 2014 to June 20, 2014

Mr. Csanadi represents that at some time after March 7, 2014 (he does not specify when), "[a] law clerk at FCI-Butner offered to help him with th[e] monumental task" of filing a § 2255 petition, "and to save time would have his sister, the paralegal, electronically file Mr. Csanadi's motion for one hundred dollars. He also told Mr. Csanadi that the Court granted a ninety day exten[s]ion, which made his new deadline to file June 22, 2014."[8] (Mot. for Leave to File 2255 Out of Time at 3.) The Government contends that these do not constitute rare and extraordinary circumstances to warrant equitable tolling (Gov't's Omnibus Opp'n at 15–16), and indeed, there is ample caselaw to support the Government's position, *see, e.g., Rabbani v. United States*, No. 1:08-CR-118 (EAW), 2016 WL 182905, at *5 (W.D.N.Y. Jan. 11, 2016) ("'[Petitioner] had ultimate responsibility for managing the preparation and timely filing of his habeas petition, and . . . entrusting some aspect of it to another person . . . [does not] constitute[ ] sufficient "extraordinary circumstances" to warrant equitable tolling.'" (quoting *Hamilton v. Warden of Clinton Corr. Facility*, 573 F. Supp. 2d 779, 781 (S.D.N.Y. 2008)); *Walker v. Graham*, 955 F. Supp. 2d 92, 103 (E.D.N.Y. 2013) ("Courts in New York consistently have held that reliance on a jailhouse lawyer, or even on the erroneous advice of a licensed attorney, does not qualify as an extraordinary circumstance warranting equitable tolling."); *Pillco v. Bradt*, No. 10 CIV. 2393 (SAS), 2010

---

periods he was in transit from April to May 2013 and January 24, 2014 to February 17, 2014 are irrelevant because the Court begins counting the statutory period from February 24, 2014.

[8] Mr. Csanadi admits that there was no truth to the inmate's representation regarding having received a ninety-day extension. *See Csanadi*, No. 3:11cr239 (JBA), Motion for Leave to File 2255 Petition Out of Time at 2.

15

WL 3398467, at *2 (S.D.N.Y. Aug. 26, 2010) ("[E]ntrusting one's legal papers to another inmate cannot be a ground for equitable tolling as it represents a complete abdication of responsibility by the habeas petitioner.").

Even if this Court held otherwise and tolled the period during which Mr. Csanadi was lulled into believing a petition was being filed on his behalf, he still would not have filed his petition within the statutory period required by AEDPA. Rather, beginning the "clock" on February 24, 2014, and tolling the periods between March 7, 2014 and June 20, 2014, August 14 and August 27, 2014, and January 8, 2015 and February 3, 2015, the statute of limitations would have run by the end of July 2015—several months before Mr. Csanadi filed his petition. Mr. Csanadi's Motion for Extension of Time is therefore denied. Moreover, even if this Court had granted Mr. Csanadi's motion, his claim would fail on the merits, as explained below.

### B. Petition under § 2255

Because Mr. Csanadi did not file his § 2255 petition within the statute of limitations, his claim is barred. However, even were this Court to consider it on the merits, it would fail. Mr. Csanadi raises two claims in his petition: (1) the warrant used to seize items from his residence was unconstitutional; and (2) his attorney was ineffective in failing to file an appeal.

#### 1. Constitutionality of the Warrant

Mr. Csanadi is, as the Government argues, procedurally barred from raising the first of these two claims. Under the procedural default rule, "[w]hen a petitioner fails to raise a claim on direct appeal, . . . the petitioner is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default

and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted." *Morales v. United States*, No. 3:12-CV-0194 (MPS), 2014 WL 7369512, at *9 (D. Conn. Dec. 29, 2014) (internal quotation marks omitted); *see Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010) (same). "To establish 'cause,' a petitioner has to show that the circumstances that impeded his counsel's efforts are external to the petitioner, something that cannot be fairly attributed to him, such as constitutionally ineffective assistance of counsel, interference by officials that makes compliance with the applicable procedural rule impracticable, or a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Benoit v. United States*, No. 08-CV-04941, 2010 WL 3925201, at *7 (E.D.N.Y. Feb. 25, 2010) *report and recommendation adopted*, No. 08-CV-4941, 2010 WL 3924736 (E.D.N.Y. Sept. 29, 2010) (internal quotation marks and citations omitted).

Where, as here, a petitioner "waive[s] or abandon[s] a claim by failing to either preserve it for, or raise it on direct appeal," the claim is deemed procedurally barred. *Walker v. United States*, 306 F. Supp. 2d 215, 223 (N.D.N.Y. 2004); *see Campino v. United States*, 968 F.2d 187, 191 (2d Cir. 1992) ("Campino has not shown any cause for his failure to raise his fourth amendment claim on direct appeal. Campino knew of the claim at the time of appeal: he objected to admission of the seized evidence both in a pre-trial motion and again at trial. He was represented by counsel at trial and on appeal, and, indeed, he raised other issues concerning the seizure of the evidence. He has shown neither cause for his failure to raise the claim of illegal seizure on direct review, nor prejudice resulting therefrom."); *Benoit*, 2010 WL 3925201, at *7 ("If a petitioner knew of a claim at the time of the appeal

and was represented by counsel, the petitioner is barred from raising such claim on a Section 2255 motion.").

Although Mr. Csanadi preserved his right to appeal the Court's denial of his motion to suppress, he did not preserve the right to appeal the constitutionality of the search warrant on any basis not argued in his motion to suppress. Contrary to Mr. Csanadi's apparent belief, as expressed in his Reply brief, the argument he raises now is distinct from the arguments he raised in his motion to suppress. In that motion, Mr. Csanadi sought to suppress the videos and DVDs recovered from his house on the grounds that the phrase "video and/or audio recording devices," as used in the warrant, did not include videos and DVDs, or alternatively on the grounds that there was no probable cause to search for videotapes and DVDs. He now makes the very different argument that the warrant was invalid as insufficiently specific. Because Mr. Csanadi did not preserve this argument and because he has not demonstrated cause for his failure to do so, he is barred from raising this claim now.

### 2. Ineffective Assistance of Counsel

Mr. Csanadi next argues that he received ineffective assistance of counsel because Attorney Thomas failed to file an appeal on his behalf. A petitioner seeking to bring a claim of ineffective assistance of counsel must satisfy two prongs: (1) "the defendant must show that counsel's representation fell below an objective standard of reasonableness;" and (2) the defendant must demonstrate that "any deficiencies in counsel's performance [were] prejudicial to the defense." *Strickland v. Washington*, 466 U.S. 668, 688 & 692 (1984). A court assessing such a claim "must be highly deferential" to counsel, must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances

18

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Assuming, once again, for purposes of this ruling, that Mr. Csanadi did in fact tell Attorney Thomas to appeal and Attorney Thomas failed to do so, Attorney Thomas's performance would have been deficient, as the Government acknowledges. However, Mr. Csanadi's claim would nonetheless fail because he has not demonstrated that he likely would have succeeded on appeal. For all of the reasons set out in the Court's Ruling on Mr. Csanadi's motion to suppress, the Court finds that the Second Circuit would not have ruled in Mr. Csanadi's favor on appeal, and as such, Mr. Csanadi has not demonstrated prejudice.

For the foregoing reasons, even if the Court had reached the merits of Mr. Csanadi's § 2255—which it does not—his petition would have been denied.

### C. Certificate of Appealability

The only remaining issue is whether to issue a Certificate of Appealability ("COA"). Under 28 U.S.C. § 2253(c)(2), "a certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* In order to sustain this burden, Petitioner would have to show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citations omitted). Because Mr. Csanadi has not made such a showing, the Court declines to issue a COA.

19

**IV. Conclusion**

Mr. Csanadi's Motion [Doc. # 1] for Leave to File 2255 Out of Time is DENIED, and his Motion [Doc. # 2] to Vacate, Set Aside or Correct Sentence under § 2255 is also DENIED. The Clerk is requested to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of May 2016